UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | : | |
|---|---|---|
| **F.D., S.D., on behalf of minor child, K.D., et. al.,** | : | |
| | : | Civil Action No.:05-5237 (AET) |
| Plaintiffs, | : | |
| | : | |
| v. | : | OPINION AND ORDER |
| | : | |
| **HOLLAND TOWNSHIP BOARD OF EDUCATION,** | : | |
| | : | |
| Defendants. | : | |
| | : | |

**BONGIOVANNI, United States Magistrate Judge**

This matter comes before the Court on Motion by Stacy Greenwald, Esq., attorney for Plaintiffs F.D. and S.D. on behalf of their minor child K.D. (hereinafter "Plaintiffs") seeking to introduce additional evidence in the appeal of the Hon. John R. Tassini's, Administrative Law Judge, decision denying Plaintiffs' tuition reimbursement under the Individuals with Disabilities Education Act (hereinafter "IDEA"), 20 U.S.C. § 1415(i)(2006).  Defendant, Holland Township Board of Education (hereinafter "Defendant" or "BOE") opposes said Motion.  Following oral argument regarding the admission of the additional evidence and for the reasons set forth below, the Motion to Introduce Additional Evidence is DENIED.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**[1]

K.D. was born on April 20, 1991, and possesses superior intelligence, but also suffers a language-based learning disability, attention deficit disorder, and auditory processing deficits.

---

[1] The following facts are taken from Judge Tassini's Opinion of October 6, 2005, with supplementation provided in the parties' briefs to this Court.  Referencing Judge Tassini's factual findings does not constitute an adoption of those findings.

(ALJ Opinion at 4). In kindergarten, K.D. was classified as perceptually impaired, which enabled her to receive special education and related services. Id. In August 2003, following seven years of special education in the public school, Plaintiffs unilaterally withdrew K.D. from her Individualized Education Program (hereinafter "IEP") in the public school and placed her in the seventh grade at the private Cambridge School. Id. at 17. On February 18, 2004, Plaintiffs' attorney:

> notified the [Defendant] of their claim that the [Defendant] should pay for placement in the private school, 'commencing immediately and continuing for so long as the placement remains appropriate.' By letter dated February 25, 2004, the [Defendant] denied the request, noting that the parties had agreed to an IEP providing for placement in the public school system and that the Department of Education had not approved the Cambridge School for placement of educationally disabled students. Id.

In sum, Plaintiffs "demanded that the [Defendant] pay the private school's tuition and the [Defendant] denied responsibility for the claim." Id. at 3. Consequently, on August 16, 2004, Plaintiffs filed a request for a due process hearing with the Department of Education, Office of Special Education Services. Id. Shortly thereafter, administrative hearings were held on February 15 and 16, April 12, and May 20, 2005. Id.

During the administrative hearings, Plaintiffs reserved "the right to call any employee from the Cambridge School." (Def. Br. at 8 (quoting Plaintiffs' Amended Joint Discovery Plan (May 23, 2006)). During the hearing on April 12, 2005, Plaintiffs' attorney announced she had "scheduled a representative from the Cambridge School" to testify on May 20, 2005. Id. (quoting Administrative Law Transcript of April 12, 2005). However, Plaintiffs failed to call any representatives from the Cambridge School to describe the educational program provided to K.D.

on the scheduled date. (ALJ Opinion at 18). Plaintiffs rested their case having called three witnesses to testify: Mrs. D., K.D.'s mother; Dr. David Henley, Ph.D., a psychologist who had provided counseling and art therapy to K.D. since approximately November 2001; and Dr. Frank Ferrise, Psy.D., one of K.D.'s treating school psychologists with many years of experience in testing and counseling school children. Mrs. D. testified that K.D. learned to read and do homework by herself at Cambridge. She also testified that Cambridge School does not give grades and students pass according to "levels". Id. at 17. Mrs. D. further testified that K.D. was a happier child at Cambridge and that "a happy state of mind is conducive to educational progress." Id. at 20. Dr. Henley testified that he had seen the Cambridge School's promotional materials, knew of other children placed there, and approved of K.D.'s placement in the Cambridge School. However, he never visited the Cambridge School. Id. Dr. Ferrise testified that a smaller special education environment would be more supportive and helpful to K.D. with respect to her special needs. Id. at 12-13. Dr. Ferrise "candidly testified that he had 'heard' that the Cambridge School offered appropriate services" but could not attest to the appropriateness of that school. Id. at 20.

Thereafter, on October 6, 2005, Judge Tassini found:

> Placement in the Board of Education's public school environment prevented her from progressing appropriately, and she required out-of-district placement. Nonetheless, petitioners agreed to an IEP that continued her placement in the [Defendant's] public school system for the 2003-2004 school year…. In any event, the petitioners did not present sufficient competent and credible evidence that the Cambridge School provided an appropriate education program and services…. The [Defendant] should not be ordered to pay for the cost of the private school placement.

Id. at 15-16, 20.

The parties then requested transcripts of the hearing and also requested an opportunity to submit written briefs.  Judge Tassini granted the requests, and briefs were submitted by the parties on September 2, 2005.  Id. at 3.  Shortly thereafter, Plaintiffs' attorney submitted a letter stating she believed she would admit three exhibits consisting of records from the Cambridge School.  Id.  The Defendant objected to these exhibits as Plaintiffs "had called no witness from the Cambridge School to provide a foundation sufficient for admission of that school's records or to otherwise describe the education and services it provided for K.D. ..."  Id. at 4.  On September 26, 2005, during a telephone conference with Judge Tassini, Plaintiffs' attorney withdrew the motion for admission of Cambridge records into evidence.  Id.

Plaintiffs appealed the decision of the Administrative Law Judge to the district court pursuant to 20 U.S.C. § 1415(i)(2)(B). They now seek to offer expert testimony attesting to the appropriateness of the Cambridge School in order to obtain tuition reimbursement from February 28, 2004, through the end of K.D.'s 2005 school year.

## II.     STANDARD OF REVIEW

The Individuals with Disabilities Educational Act (IDEA) "is a Spending Clause statute that seeks to ensure that 'all children with disabilities have available to them a free and appropriate public education.'"  Schaffer v. Weast, ___ U.S. ___, 126 S. Ct. 528, 528, 163 L. Ed. 2d 387 (2005).  Congress's goal in enacting the IDEA "seems to be the assurance of access to special education services for children with disabilities." Susan N. v. Wilson Sch. Dist., 70 F.3d 751, 761 (3d Cir. 1996).  The IDEA requires that states receiving federal funds under this Act must ensure that a free and appropriate education (hereinafter "FAPE") "is available to all children with disabilities." 20 U.S.C. § 1412(a)(4)(2006).  The public school must create an

Individualized Educational Program (IEP) for each child and if the parents believe their child's IEP is inappropriate, they may request an administrative "impartial due process hearing." 20 U.S.C. § 1415(f)(2006). Prior to these administrative hearings, "the parties must disclose evaluations and recommendations that they intend to rely upon. 20 U.S.C. § 1415(f)(2). IDEA hearings are deliberately informal and intended to give ALJs the flexibility that they need to ensure that each side can fairly present its evidence." Schaffer, 126 S. Ct. at 536.

When deciding an IDEA case, the District Court applies a modified *de novo* review. S.H. v. State-Operated Sch. Dist. of the City of Newark, 336 F.3d 260, 270 (3d Cir. 2003). Federal courts do not have a particularized expertise in educational policy and should give due weight to the administrative proceedings. Hendrick Hudson Bd. of Educ. v. Rowley, 458 U.S. 176, 206-07 (1982). However, when engaging in judicial review under the IDEA, the court may hear additional evidence not offered at the administrative hearing. 20 U.S.C. §1415(i)(2)(B). Courts have defined "additional" in the ordinary sense, meaning supplemental. See Perrin v. United States, 444 U.S. 37, 44 (1980); see also Burlington v. Dep't. of Educ., 736 F.2d 773, 790 (1st Cir. 1984).

The decision whether to admit or exclude additional evidence in an IDEA judicial review proceeding is within the sound discretion of the trial court. Susan N., 70 F.3d at 760. The threshold inquiry is whether the proffered additional evidence will assist the court in ascertaining whether Congress' goal has been and is being reached for the child involved. Id. "While a district court may exclude additional evidence, a court must exercise particularized discretion in its rulings so that it will consider evidence relevant, non-cumulative, and useful in determining whether Congress's goal has been reached for the child involved." Id. Thus construed, the

additional evidence must not simply repeat or embellish evidence provided at the administrative proceeding. Id. at 762.

When determining whether additional evidence may be permitted courts have considered a number of factors, including but not limited to the following:

> Whether the existence of a procedural bar prevented the introduction of the proffered evidence below, such as a limitation period or a restriction on the number of witnesses. See Monticello Sch. Dist. No. 25 v. George L., 102 F.3d 895, 901-02 (7th Cir. 1996);
>
> Whether the evidence was deliberately withheld at the administrative level for strategic reasons. See Roland M. v. Concord Sch. Comm., 910 F.2d 983, 998 (1st Cir. 1990);
>
> Whether the introduction of the additional evidence at the district court level would be prejudicial to the other party, i.e. if the additional evidence would interfere with the adverse party's ability to rebut it; and
>
> The potential impact on the administration of justice, i.e. does the party seek to introduce a new theory under which it will be entitled to relief. Courts have construed the word "additional" as used in the IDEA as "supplemental." Susan N., 70 F.3d at 759. In that regard, a party should not be permitted to introduce evidence unrelated to a legal theory presented at the prior hearing.

Antoine M. v. Chester Upland Sch. Dist., 420 F.Supp.2d 396, 403 (E.D.Pa. 2006).

Additional or supplemental evidence should be used to fill gaps in the "administrative transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing." Burlington, 736 F.2d at 790. The court in Burlington also noted that a valid reason for not presenting expert testimony during the administrative hearing could be the costliness of expert witnesses. Id. at 791. However, the First Circuit warned that in ruling on an additional evidence motion, "a court should weigh heavily the

important concerns of not allowing a party to undercut the statutory role of administrative expertise, the unfairness involved in one party's reserving its best evidence for trial, the reason the witness did not testify at the administrative hearing, and the conservation of judicial resources." Id. at 791.  Courts cannot "grant carte blanche to a party to introduce evidence that was not offered at the administrative hearing, and thus render the administrative proceedings a mere formality." Antoine v. Chester Sch. Dist., 420 F. Supp.2d at 403.

Overall, in evaluating the additional evidence, the court, in its discretion, must respect the cooperative federalism of the IDEA while considering evidence that is relevant, cumulative, and useful.  Id.  "To negotiate these principles, a court should make an individualized assessment of the offered evidence, and determine whether the party offering the evidence has a valid reason for not introducing it below.  Id.

> A.  **The Proffered Additional Testimony Is Impermissible After-Acquired Evidence.**

This Court finds that the proposed additional evidence to show the appropriateness of the Cambridge School was available and should have been proffered during the administrative law hearing.  The court in Susan N. noted that after-acquired evidence that was potentially available to a plaintiff when the school district made its decision is excludable.  70 F.3d at 762. "Neither [20 U.S.C. §1415(i)(2)(B)] nor reason countenance 'Monday Morning Quarterbacking' in evaluating the appropriateness of a child's placement." Id. (citing Fuhrmann v. East Hanover Bd. of Educ., 993 F.2d 1031, 1040 (3d Cir.1993).  Although the Court in Susan N. cautioned "a more liberal approach might be appropriate in a case involving a claim for remedial education relief," as opposed to an approach taken in a damages action, it nonetheless held that after-acquired evidence "should be used by courts only in assessing the reasonableness of the [school]

district's initial decisions regarding a particular IEP or the provision of special education services at all." Id.

Plaintiffs seek to introduce the testimony of two expert witnesses as representatives of Cambridge School, either the Director, Deborah Peters, or one of K.D.'s teachers and an independent expert witness, Dr. Carole Aitchison. The witness from Cambridge will likely:

> submit a report and testify if required regarding the Cambridge program, the Cambridge School curriculum, the scope and sequence of instruction, the credentials of the teachers, the number of students that attend Cambridge, the types of students that attend Cambridge, [how specialized language instruction is incorporated], their evaluation of K.D. and her educational needs, her functioning level when she first entered the Cambridge School... and her functioning at the time of graduation. The individuals will also testify regarding K.D.'s progress and how Cambridge was able to remediate K.D.'s differences and enable her to learn.

(Pl.'s Letter Describing Evidence, p.1 (June 30, 2006)). Whereas, Dr. Aitchison would testify to "K.D.'s educational records, including her IEP's and educational testing.... [H]er observation at the Cambridge School, review of K.D.'s work samples from the Cambridge School, testing completed at the Cambridge School ... credentials of teachers at the Cambridge School and why the Cambridge School was appropriate to meet K.D.'s educational needs." Id. at 1-2.

The now proposed evidence concerning Cambridge's programs, curriculums, teacher qualifications, and K.D.'s progress was available on May 20, 2005. Plaintiffs scheduled a Cambridge representative to attest to the Cambridge School's appropriateness on May 20, K.D.'s second-to-last month at Cambridge. Plaintiffs' witness was never called on May 20 because: (1) they were "not available", (2) Plaintiffs "tried to keep the cost of the proceeding down" and (3) Plaintiffs believed they would prevail without presenting evidence regarding the Cambridge School. (Oral Arg. at 16-17). Furthermore, Plaintiffs' scheduling of a witness supports the

conclusion that such evidence was in fact available on May 20, 2005.

The proffered testimony was "acquired" after the administrative hearing for purposes of its admissibility. After-acquired evidence is only admissible as additional evidence to determine the reasonableness of the original IEP. The ALJ ruled that Defendant's IEP was inappropriate. Moreover, the proffered evidence relates directly to the appropriateness of K.D.'s placement of the Cambridge School, not Defendant's IEP. The proffered additional evidence is therefore inadmissible.

### B.  Plaintiffs Failed to Provide Sufficient Justification for Not Proffering the Evidence at the Administrative Hearing.

Plaintiffs did not provide a "sufficient justification" for not proffering the evidence during the administrative hearing and this Court will not permit its introduction now. The Antoine factors discussed above indicate instances which constitute sufficient justifications for not proffering the evidence earlier.

The first is the existence of a procedural bar which might have prevented the evidence from being proffered during the administrative hearing. Antoine, 420 F. Supp.2d at 403. A procedural bar might be a limitations period or a restriction on the number of witnesses imposed by the ALJ. Id. In the current matter, Plaintiffs conceded that there was no procedural bar that prevented them from proffering the evidence during the ALJ hearing which they now offer to this Court. (Oral Arg. at 17-18). Although Plaintiffs' witness was unavailable on the May 20 hearing date which had been agreed upon, nothing prevented Plaintiffs from asking for an adjournment to reschedule the hearing date or to ask for an additional hearing. Id. Plaintiffs were aware they did not have anyone from Cambridge testify during the hearing and yet never raised this as an issue to the ALJ. Id. Furthermore, Plaintiff's had reserved the right to call "any employee of the

Cambridge School" and could have called any other teacher or knowledgeable person from Cambridge who could have testified in place of the unavailable witness but did not do so.

Additionally, at the close of the hearing and upon request of the parties, the administrative proceedings were supplemented in writing and Plaintiffs sought to submit three exhibits consisting of K.D.'s progress reports from Cambridge. Id. at 16.  Defendant objected to these exhibits as the parties had previously agreed they would not object "to marking any of the exhibits as joint exhibits, so long as there was going to be somebody to testify regarding the exhibits," Id.  Before the ALJ could rule on Defendant's objection, Plaintiffs withdrew the exhibits. (ALJ Hearing at 4).  Plaintiffs further acknowledged that the ALJ did nothing to prevent Plaintiffs from arguing about whether or not they could rely on these exhibits. (Oral Arg. at 17).  "IDEA hearings are deliberately informal ... to ensure that each side can fairly present its evidence." Schaffer, 126 S.Ct. at 536. Despite two opportunities, the Plaintiffs failed to call a witness from the Cambridge School, and withdrew their exhibits.   Thus, the Court finds no procedural bar which may have prevented the evidence from being proffered during the administrative hearing.

The second factor of Antoine directs the court to consider whether the proposed additional evidence was deliberately withheld from the administrative hearing for strategic reasons.  Antoine, 420 F. Supp.2d at 403, (quoting Roland M. v. Concord Sch. Comm., 910 F.2d 983, 998 (1st Cir. 1990)).  Plaintiffs intentionally withheld the testimony of a Cambridge representative due to time management issues, cost issues, and because Plaintiffs "had tried cases similar to this where nobody from the actual school had testified" where they were successful based on such limited evidence.  (Oral Arg. at 16-18).  Proof of the Cambridge School's

appropriateness is necessary to receive reimbursement and evidence regarding Cambridge's appropriateness could have been presented. A party should not be able to call additional witnesses who were previously available when strategically, they thought they had presented enough evidence to prevail. Plaintiffs deliberately withheld this evidence for strategic reasons, and were this Court to allow such evidence to be introduced, it would eviscerate the authority of the administrative hearing.

The third factor of Antoine considers whether the additional evidence would be prejudicial to the adversary. Antoine, 420 F. Supp.2d at 403. Currently, Defendant claims it will be prejudiced by the introduction of Dr. Aitchison's export report as the doctor was neither identified as a potential witness nor will Defendant have an opportunity to refute the testimony because K.D. graduated from the Cambridge School in approximately June, 2005. "The [Defendant] can't go to that school and observe her program in order to see if what Dr. Aitchison says is true and correct. Parenthetically, Dr. Aitchison is not going to be able to make that kind of a visit either..." (Oral Arg. at 28). Plaintiffs counter that Defendant had "ample opportunity" to observe K.D.'s placement in Cambridge. Id. at 31. However, prior to the ALJ hearings, "the parties must disclose evaluations and recommendations they intend to rely upon. 20 U.S.C. § 1415(f)(2) ..." Schaffer, 126 S.Ct. at 536. Had Defendant been aware of Dr. Aitchison's testimony, they might have responded and prepared differently. Moreover, Defendant is placed at a significant disadvantage because they are unable to observe K.D. at the Cambridge School. Thus, this Court precludes Dr. Aitchison's expert report and testimony as it would prejudice Defendant by placing Defendant in a disadvantageous position regarding their ability to refute Dr. Aitchison's expert report.

The final factor that <u>Antoine</u> addresses when a party does not proffer available evidence at the administrative level is "the potential impact on the administration of justice," such as attempting to introduce a new legal theory unrelated to what was presented previously which would entitle that party to relief. <u>Antoine</u>, 420 F. Supp.2d at 403. While Plaintiffs do not attempt to present a new legal theory, they do attempt to introduce new evidence that was rarely referenced during the ALJ hearings. Plaintiffs conceded that during the ALJ hearings they were not only apprised of but also litigated the action as if they had the burden of proving the Cambridge School's appropriateness, yet Plaintiffs chose not to offer the testimony of anyone from Cambridge. (Oral Arg. at 11).

Plaintiffs proffered three witnesses to prove Cambridge's appropriateness. None of these witnesses, however, had any connection or relation to the Cambridge School, its curriculum, its teachers, and foremost K.D.'s functioning at the school. Plaintiffs' first expert witness, Dr. Henley, "has nothing to do with the Cambridge School. ... He was her therapist. And testified that her placement at the Cambridge School was appropriate." <u>Id</u>. at 10. Dr. Henley has seen the Cambridge School's promotional materials but has never visited the School. (ALJ Opinion at 20). Dr. Ferrise, the second expert that testified on behalf of Plaintiffs, "outlined what the parameters of an appropriate program should look like ... and mentioned all of the things that were being provided to [K.D. at the Cambridge School]." (Oral Arg. at 16). However, Dr. Ferrise "candidly testified that he had 'heard' that the Cambridge School offered appropriate services" but could not attest to the appropriateness of that school. (ALJ Opinion at 20). Plaintiffs now seek to introduce the testimony of a Cambridge School employee, and while it is not a new legal theory, it would "impact the administration of justice" in that it would alter this

"modified trial de novo" into a completely new trial with new experts and justifications for K.D.'s placement, which thus renders the administrative proceeding a mere formality.

### C. The Purported Shifting of the Burden of Proof Has No Bearing on Plaintiffs' Case.

Plaintiffs also contend that the Court should grant them leave to expand the administrative record pursuant to the United States Supreme Court's decision in Schaffer, 126 S.Ct. 528 (2005), which held that the party challenging an IEP bears the burden of proof. "The burden of proof in an administrative hearing challenging an IEP is properly placed on the party seeking relief." Id. at 537.

Plaintiff is correct that the burden of proving the appropriateness of the IEP has shifted following Schaffer. Previously, the law in New Jersey was that the school district always carried the burden of proving the appropriateness on the IEP. See Lascari v. Bd. of Educ., 116 N.J. 30 (1989). The Supreme Court in Schaffer, which involved a challenge to the school district's IEP, expressly stated, "[w]e hold no more than we must to resolve the case at hand: The burden of proof in an administrative hearing challenging an IEP is properly placed on the party seeking relief." 126 S.Ct. at 537. Plaintiffs had the burden of proving the Cambridge School was appropriate before Schaffer and the Supreme Court's decision did not change this.

### IV. CONCLUSION

For the foregoing reasons, it is on this 25th day of August, 2006, hereby ORDERED that Plaintiff's to Expand the Administrative Record is DENIED.

                                                      s/Tonianne J. Bongiovanni
                                                      **HONORABLE TONIANNE J. BONGIOVANNI**
                                                      **UNITED STATES MAGISTRATE JUDGE**