<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

| | | |
|---|---|---|
| F.D. & S.D., as Guardians *ad litem* of K.D., | : | |
| | : | Civ. No. 05-5237 (AET) |
| Plaintiffs, | : | |
| | : | **<u>OPINION AND ORDER</u>** |
| v. | : | |
| | : | |
| HOLLAND TOWNSHIP BOARD OF EDUCATION, | : | |
| | : | |
| Defendant. | : | |
| | : | |

_____ :

<u>THOMPSON, U.S.D.J</u>

I.      Introduction

        This matter is before the Court on its own motion to reconsider its April 23, 2007 Order

denying without prejudice the parties' cross-motions for summary judgment.  The Court has

jurisdiction over this matter under 20 U.S.C. § 1415(i)(2).  The Court has decided this appeal

after considering the written submissions of the parties, and hearing additional testimonial

evidence, pursuant to 20 U.S.C. § 1415(i)(2)(C), on June 22, 2007.[1]  For the reasons set forth

below, Plaintiffs' motion for summary judgment is granted and Defendant's motion is denied.

II.     Background

_____

        [1] The decision whether to admit or exclude additional evidence in an IDEA judicial
review proceeding is within the sound discretion of the trial court.  <u>See</u> <u>Susan N. v. Wilson Sch.</u>
<u>Dist.</u>, 70 F.3d 751, 760 (3d Cir. 1996).  The decision to hear additional evidence in this case
followed a reversal of the Magistrate Judge's August 25, 2006 decision, and was based on a
review of the administrative record, which demonstrated the need to fill in gaps in that record
caused by unavailable witnesses and the high cost of additional expert testimony.  <u>See, e.g.</u>,
<u>Burlington v. Dep't of Educ.</u>, 736 F.2d 773, 790 (1st Cir. 1984).

This case arises under the Individuals with Disabilities Education Act ("IDEA"), and

raises the issue of whether Defendant Holland Township Board of Education ("Holland

Township" or "Defendant") must reimburse Plaintiffs F.D. and S.D. for the unilateral placement

of their daughter K.D. in a private school called the Cambridge School in Pennington (the

"Cambridge School"), for the school years of September 2003 through June 2004, and September

2004 through June 2005.

> A.      Individuals with Disabilities Education Act

Under the IDEA, Congress granted federal funding to the states for special education

programs, contingent on the action of the states in providing a "free appropriate public

education" ("FAPE") to disabled children.  20 U.S.C. § 1400(d)(1)(A).  FAPE is defined as

> special education and related services that -- (A) have been
> provided at public expense, under public supervision and direction,
> and without charge; (B) meet the standards of the State educational
> agency; (C) include an appropriate preschool, elementary school,
> or secondary school education in the State involved; and (D) are
> provided in conformity with [an] individualized education program
> . . . .

20 U.S.C. § 1401(9).  In Rowley, the Supreme Court held that a state satisfied the FAPE

requirement when that state provided "personalized instruction with sufficient support services to

permit the child to benefit educationally from that instruction."  Bd. of Educ. v. Rowley, 458

U.S. 176, 203 (1982).  The state must offer access to education that is "meaningful," Ridgewood

Bd. of Educ. v. N.E., 172 F.3d 238, 247 (3d Cir. 1999), but does not need to offer education that

"maximize[s] each child's potential," Rowley, 458 U.S. at 198.

At its core, the IDEA requires that an Individualized Education Program ("IEP") be

designed for each disabled child.  20 U.S.C. § 1414(d); S.H. v. State-Operated Sch. Dist., 336

F.3d 260, 264 (3d Cir. 2003).  The IEP sets forth the goals and objectives which will be used to determine whether the child is receiving a FAPE.  20 U.S.C. § 1414(d); S.H., 336 F.3d at 264. In New Jersey, the IEP is developed by a school district's Child Study Team ("CST"), composed of a school psychologist, a learning disabilities teacher-consultant, and a school social worker, along with the child's parents, a teacher familiar with the child, and other appropriate school personnel.  N.J. Admin. Code § 6A:14-2.3(i); S.H., 336 F.3d at 264-65.  The IEP is reviewed at least annually to determine whether the child is reaching the stated goals, and is revised as necessary.  20 U.S.C. § 1414(d)(4); S.H., 336 F.3d at 265.

Parents who unilaterally withdraw their child from public school and place him or her in private school without consent from the school district "do so at their own financial risk."  Sch. Comm. of Burlington v. Dep't of Educ. of Mass., 471 U.S. 359, 374 (1985).  They may be entitled to reimbursement for tuition costs for their unilateral private placement only if a court finds that the proposed IEP was inappropriate and the private placement was appropriate under the IDEA.  20 U.S.C. §1412(a)(10)(C)(ii); N.J. Admin. Code § 6A:14-2.10(b); Florence County Sch. Dist. Four v. Carter, 510 U.S. 7, 15 (1993).  A court may reduce or deny reimbursement if a parent fails to notify the IEP team that she is rejecting the IEP proposal, and fails to notify the district board of education of her intent to enroll her child in a nonpublic school within ten days of the child's removal from the public school.  See N.J. Admin. Code § 6A:14-2.10(c)(1-2).

In New Jersey, parents who disagree with a school district's proposed IEP may challenge the IEP in a due process hearing, which is adjudicated by an Administrative Law Judge ("ALJ"). N.J. Admin. Code § 6A:14-2.7; Lascari v. Bd. of Educ., 116 N.J. 30, 37 (1989).  The ALJ's final decision may then be appealed by any aggrieved party through a civil action filed in state or

federal court.  20 U.S.C. § 1415(i)(2).

      B.      <u>Relevant Case History</u>

K.D. is a gifted teenage girl with a performance intelligence quotient ("I.Q.") of 135, who also has several learning disabilities.  K.D. has been classified as eligible for special education since kindergarten and her parents and Holland Township have conferred year after year with a CST to devise an IEP for K.D.'s education.  As K.D. progressed from kindergarten to sixth grade her functioning in several subjects lagged behind what is generally expected from a child of her age, despite periodic adjustments to her IEP.   K.D. became significantly distressed over her inability to keep pace with her classmates.  Throughout elementary school, K.D. underwent evaluations by several mental health professionals who diagnosed her at various points with generalized anxiety disorder, co-morbid depression, attention deficit disorder, among other anxiety and depression related problems.  During the 2001-02 school year, K.D. received psychiatric care, medication to treat her psychological ailments, and art therapy sessions.

At various points in K.D.'s elementary education her grades would improve, yet her standardized test scores remained far lower than the norm in several subjects.  In February 2003, while K.D. was in the sixth grade, Plaintiffs retained Dr. Ferrise, a school psychologist to seek advice on potential solutions for improving K.D.'s performance and alleviating her mental distress.  After running a battery of diagnostic tests, Dr. Ferrise determined that K.D. had a very high I.Q. but suffered from various language-based disabilities, which caused her to lag in certain subjects.  Dr. Ferrise also determined that K.D.'s high I.Q. contributed, in large part, to her emotional distress because she recognized and continually reflected on her under-performance when compared to her peers in class.  Dr. Ferrise recommended that K.D. be placed in a school

with similarly situated students, where she could receive an education tailored to her specific

learning disabilities, and where she would not suffer anxiety and depression from being different.

Despite Dr. Ferrise's suggestions, on April 28, 2003, Plaintiffs approved the IEP for

K.D., which prescribed her attendance at Holland Township for the remainder of sixth grade, and

seventh grade (the 2003-04 school year).  At the IEP meeting, Plaintiffs received a copy of a

Parental Rights in Special Education ("PRISE") booklet that informed them of their right to

disagree with the IEP, and their obligation to inform Holland Township should they seek a

private school placement for K.D.[2]  (See Def.'s Ex. R-5.)

After K.D. finished the remainder of sixth grade, Plaintiffs, dissatisfied with her

educational progress and emotional state, decided to enroll her in the Cambridge School.

Cambridge is a private school with smaller class sizes, where students with language-based

disabilities are taught from curricula tailored to their individual needs.  Plaintiffs did not formally

notify Holland Township of K.D.'s placement at the Cambridge School, as per the PRISE

booklet.  They did express to Holland Township, on several occasions, their dissatisfaction with

K.D.'s progress, the IEP formulated for her, and their intention of placing K.D. in the Cambridge

School, prior to enrolling her.  (See, e.g., Tr. 2/15/05, 41:14-17; 73:18-22; 2/16/05, 83:12-85:17;

4/12/05, 103:16-104:12; 139:12-141:2.)  Holland Township first received formal notice of K.D.'s

enrollment in the Cambridge School on February 18, 2004, six months into her seventh grade

---

[2] The PRISE booklet states: "[i]f you plan to place your child in a nonpublic (private) school and seek reimbursement from the district, you must inform the school district at an IEP meeting or provide the school district with written notice at least 10 days (excluding weekends only) prior to the enrollment of your child . . . You must state your disagreement with the school district's IEP, the placement proposed by the school district and your intention to enroll your child in a nonpublic (private school)."  (See Def.'s Ex. R-5 at p.10.)

year, when Plaintiffs' attorney sent a letter requesting reimbursement for K.D.'s private school

placement "commencing immediately and continuing for so long as the placement remains

appropriate."  (See Def.'s Ex. R-3.)  On February 25, 2004, Holland Township sent a letter

denying the request.  (See Def.'s Ex. R-4.)  K.D. continued to attend the Cambridge School

throughout the 2003-04 and 2004-05 school years, where she reported a marked reduction in

anxiety and depression, and several standardized tests showed that her ability in several academic

areas increased.  K.D. has since returned to public school in Holland Township and has currently

finished her freshman year in high school.

Upon Holland Township's denial of reimbursement, Plaintiffs sought a hearing before an

ALJ, seeking reimbursement for tuition at the Cambridge School.  After hearing several

witnesses, and reviewing numerous exhibits, the ALJ issued a lengthy opinion on October 12,

2005 ("ALJ's Op."), denying reimbursement.  Plaintiffs, on behalf of K.D., filed this action on

November 1, 2005, appealing the ALJ's decision.  The parties subsequently filed their cross-

motions for summary judgment.  These motions raise the issues of (1) whether the ALJ properly

interpreted N.J. Admin. Code § 6A:14-2.10(b) when he determined that Plaintiffs failed to

present sufficient evidence to show that the Cambridge School provided K.D. with an

appropriate education, and (2) whether the ALJ correctly determined that Plaintiffs' failure to

adhere to the notice requirements of N.J. Admin. Code § 6A:14-2.10(c) barred them from

reimbursement.

III.    Review of an ALJ's Decision Under the Individuals with Disabilities Education Act

     A.      Standard of Review

In a case appealing an ALJ's decision under the IDEA, the district court applies a

"modified version of de novo review." L.E. v. Ramsey Bd. of Educ., 435 F.3d 384, 389 (3d Cir.

2006). The district court "must make its own findings by a preponderance of evidence . . . and

must also afford 'due weight' to the ALJ's determination." Shore Reg'l High Sch. Bd. of Educ.

v. P.S., 381 F.3d 194, 198-99 (3d Cir. 2004) (quoting Rowley, 458 U.S. at 206) (citations

omitted); see also 20 U.S.C. § 1415(i)(2)(C) ("[T]he [district] court (i) shall receive the records

of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and

(iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court

determines is appropriate."). The "due weight" standard provides district courts with "discretion

to determine how much deference to accord the administrative proceedings, and although the

district courts 'must consider the administrative findings of fact, [they are] free to accept or reject

them.'" See Carlisle Area Sch. Dist. v. Scott P., 62 F.3d 520, 527 (3d Cir. 1995). The court

reviews the ALJ's legal determinations de novo. Muller v. Comm. on Special Educ., 145 F.3d

95, 102 (2d Cir. 1998). The burden of proof in a proceeding to receive reimbursement is placed

on the party seeking relief. Ramsey, 435 F.3d at 391-92.

        B.      Analysis

        Here, the ALJ based his denial of reimbursement on two grounds: (1) Plaintiffs failed to

establish that the Cambridge School provided an appropriate education; and (2) Plaintiffs failed

to give notice to Holland Township of their dissatisfaction with K.D.'s IEP and their intent to

enroll her in a nonpublic school for which they would seek reimbursement. Each of these

independent bases for denying reimbursement will be addressed in turn.

        1.      N.J. Admin. Code § 6A:14-2.10(b)

        The Court will apply de novo review to the ALJ's interpretation of N.J. Admin. Code §

6A:14-2.10(b).  Under the regulation, certain prerequisites must be fulfilled before an ALJ can

require a school district to reimburse parents for the unilateral placement of their child in private

school.  Namely,

> [i]f the parents of a student with a disability, who previously
> received special education and related services from the district of
> residence, enroll the student in a nonpublic school, . . . or approved
> private school for the disabled without the consent of or referral by
> the district board of education, an [ALJ] may require the district to
> reimburse the parents for the cost of that enrollment if the [ALJ]
> finds that [1] the district had not made a free, appropriate public
> education available to that student in a timely manner prior to that
> enrollment and [2] that the private placement is appropriate.

N.J. Admin. Code § 6A:14-2.10(b) (emphasis added).

Here, the ALJ found that the district did not provide K.D. with an appropriate education.

(See ALJ's Op. at 27 (stating "[p]lacement in [Holland Township's] public school environment

prevented [K.D.] from progressing appropriately, and she required out-of district placement").)

Nonetheless, the ALJ denied reimbursement, finding Plaintiffs "did not present sufficient

competent and credible evidence that the Cambridge School provided an appropriate educational

program and services."  (Id.)

As the Supreme Court has stated, "when a public school system has defaulted on its

obligations [to provide a FAPE], a private school placement is 'proper under the Act' if the

education provided by the private school is 'reasonably calculated to enable the child to receive

educational benefits.'"  Florence, 510 U.S. at 11-14 (citations omitted).  When parents

unilaterally withdraw their child from public school, because of a default by the school, the

parents' selection need not meet the criteria of a FAPE.  As the Third Circuit has stated, "the test

for the parents' private placement is that [the placement] is appropriate, and not that it is perfect."

Warren v. Cumberland County Sch. Dist., 190 F.3d 80, 84 (3d. Cir. 1999).  The parents have the burden to prove that the private school is "appropriate" and "reasonably calculated to provide educational benefits."  See Carlisle, 62 F.3d at 533.

The ALJ relied upon several findings in ruling that Plaintiffs failed to show the Cambridge School had an appropriate program for K.D., such as (1) the Cambridge School was not approved to teach special education by Holland Township; (2) Plaintiffs failed to demonstrate that K.D. could be provided with an appropriate education closer to home; and (3) Plaintiffs failed to call a witness from the "Cambridge School (or elsewhere) to detail the academic courses, levels, and services that Cambridge provided."  (ALJ's Op. at 20, 27.)

The Supreme Court has ruled that parents who unilaterally place their child into a private school need not prove either that the private school is approved by the board of education to teach special education, or that there were appropriate schools closer to home.  Florence, 510 U.S. at 11, 14; Warren, 190 F.3d at 84.  These factors are relevant to whether a public school is providing a FAPE, but not to whether a private school education is appropriate.  Warren, 190 F.3d at 84.  Therefore, this Court affords those factors no weight in its analysis.

The fulcrum of the ALJ's ruling was based on the lack of witnesses in the administrative hearing who had observed the Cambridge School and could sufficiently establish that the school provided K.D. with an appropriate education.  This Court agrees that the administrative record contained insufficient information as to the appropriateness of the Cambridge School, although there was significant testimony offered by several witnesses.  Plaintiffs called two experts in psychology who treated K.D. before and after her attendance at the Cambridge School, and K.D.'s mother also testified as to K.D.'s improved well-being.

Dr. Ferrise, Plaintiffs' first witness, examined K.D. while she was enrolled in Holland Township and later in the Cambridge School.  While in Holland Township, Dr. Ferrise concluded that K.D. required "[a] smaller special education environment[, which] would be supportive and helpful given the extensive nature of her disabilities." (Tr. 4/12/05, 34:17-35:3.) Both Dr. Ferrise and Holland Township psychologist Dr. Salvato agreed that K.D. experienced depression and anxiety from constantly comparing herself to "normal" functioning students in her class.  (Id. at 37:9-38:18.)  It is undisputed that K.D.'s anxiety and depression were significant factors in her under-performance, and contributed to the school's categorization of her as "multiply disabled." (ALJ's Op. at 13 (stating Holland Township classified K.D. as "multiply disabled" based on the classification criteria under N.J. Admin. Code § 6A:14-3.5(c)(6), because K.D. had a "specific learning disability" and was "emotionally disturbed").)  Dr. Ferrise predicted that if she were placed in an environment with similarly situated students her anxiety and depression would dissipate and she could excel academically.  Dr. Ferrise, therefore, recommended that K.D. be placed out-of-district in a "specialized environment where [the school] would use the appropriate educational strategies and techniques needed to manage children that have language based learning disabilities." (Tr. 4/12/05, 40:10-17.)

When Dr. Ferrise re-examined K.D. during her placement at the Cambridge School he found that "she was really remarkably better in terms of her anxiety and depression." (Id. at 41:3-8.)  Dr. Ferrise observed that K.D.'s psychological state, depression and anxiety dramatically improved.  While K.D. had to attend weekly psychological sessions during her tenure at Holland Township, Dr. Ferrise reported that she needed only simple "check-in" sessions with her psychologist once every three months while attending the Cambridge School. (Id. at

-10-

114:15-115:1.)  Dr. Ferrise concluded that the Cambridge School provided K.D. with multiple

and significant educational benefits, stating "[t]he Cambridge School . . . provides the intense

program, teachers[,] techniques and support staff as required to meet [K.D.'s] needs."  (Pls.' Ex.

P-6.)  This opinion was based on his evaluation of K.D. although he had never been to the

Cambridge School, or observed their teaching methods firsthand.

        Dr. Henly, K.D.'s treating psychologist, also testified as to the appropriateness of the

Cambridge School.  The ALJ adjudged Dr. Henly to be an expert, qualified to give testimony

regarding "art therapy and special education."  (Tr. 5/20/2005, 31:13-18.)  Dr. Henly treated K.D.

for depression and anxiety during her time at the Holland Township School and met with her on

a weekly basis.  He also met with K.D. several times while she attended the Cambridge School.

Dr. Henly testified that while at the Cambridge School, K.D.'s "depression and separation

anxiety had gone into remission."  (Pls.' Ex. P-4.)  Dr. Henly found the Cambridge School staff

to be "trained to deal with bright children with severe learning disabilities"– children like K.D.

He found that "[t]he teachers have discrete training . . . to isolate the learning disabilities, to

develop strategies . . . whereas the teachers at [Holland Township], even with special ed support

essentially were having [K.D.] conform with their curriculum . . . with modifications, as opposed

to at Cambridge [where] the curriculum itself is built around that particular child . . . ."  (Tr.

5/20/2005, 52:13-54:7.)   He concluded that K.D.'s placement at the Cambridge School enabled

her to "flourish with individualized instruction in small classes with therapeutic-minded

educators.  These professionals have proven to be highly trained in adapting curricula and

instructional methods so as to meet this child's special needs."  (Pls.' Ex. P-4.)  It was Dr.

Henly's opinion that K.D. had received a substantial educational benefit from her placement at

the Cambridge School.  See, e.g., Polk v. Cent. Susquehanna Sch. Dist., 853 F.2d 171, 185-86

(3d. Cir. 1988).  Like Dr. Ferrise, Dr. Henly also had never been to the Cambridge School, and

relied upon his personal evaluations of K.D. and the Cambridge School's curriculum and

literature to render his opinion.

Upon hearing this evidence the ALJ concluded that there was no "competent and credible

evidence" that the Cambridge School "provided an appropriate educational program for K.D."

(ALJ's Op. at 20, 27.)  The ALJ further asserted that Plaintiffs "did not call a qualified witness

from the Cambridge School (or elsewhere) to detail the academic courses, levels, and services

that Cambridge provided."  (ALJ's Op. at 20.)  While it is true that no witness from the

Cambridge School testified, both Dr. Ferrise and Dr. Henly, who the ALJ found to be credible

and qualified experts in special education, school psychology and clinical psychology, did

provide some competent and credible evidence as to the appropriateness of the Cambridge

School education.  (Tr. 4/12/05, 58:13-24; Tr. 5/20/2005, 49:4-21.)

After reviewing the administrative record, and the ALJ's Opinion, this Court decided to

hear additional evidence on the question of the appropriateness of the Cambridge School.  The

Court found that additional "expert testimony [would be] helpful in illuminating the nature of the

controversy," see, e.g., Burlington, 736 F.2d at 790, and although such testimony may be costly

for both parties, it was warranted in this case to fill the gaps in the administrative record, and aid

in rendering a comprehensive and just resolution.  Id.  Thus, on June 22, 2007, Plaintiffs called

Joel E. Morgan Ph.D. to testify.  Dr. Morgan is qualified as an expert in neuropsychology,

evaluating students with disabilities, and developing programs for students with disabilities.  Dr.

Morgan testified that he reviewed K.D.'s case history, the records of her performance at Holland

Township, and visited the Cambridge School. At the Cambridge School, Dr. Morgan met with the director of the school for several hours, and spent roughly an hour examining teachers in class. Furthermore, Dr. Morgan reviewed several standardized tests taken by K.D. prior to her enrollment and during her two years of attendance at the Cambridge School.

Based upon his investigation, Dr. Morgan concluded that K.D. had made considerable gains "academically, cognitively and emotionally" while attending the Cambridge School, and concluded it was an appropriate and "very ideal" environment for her. He testified that K.D.'s standardized test scores rose dramatically in areas of math and reading. According to those scores, K.D.'s math ability improved several grade levels while at the Cambridge School, and her reading improved even more, jumping many grade levels.

At the Cambridge School, Dr. Morgan observed that the teachers employ multi-sensory methods in teaching throughout all courses. Based on K.D.'s case history, Dr. Morgan opined that these methods are particularly helpful to students who have her type of learning disabilities. Further, he noted that every Cambridge School teacher is qualified to teach reading irrespective of the course they teach. Dr. Morgan believed this was particularly important for K.D., as she had significant problems in the language and reading area, and had suffered from in-class anxiety because of this disability. Dr. Morgan stated that because all the Cambridge School's teachers are qualified to teach reading, they could intervene and aid K.D. in any course where the issue arose, rather than K.D. having to wait for her next reading class to address the problem. Lastly, he noted that students are grouped according to level of need, which placed K.D. among similarly situated students, thereby alleviating her anxiety caused by her feeling "different."

Based upon the opinions of Dr. Ferrise, Dr. Henley, and Dr. Morgan, the Court is

satisfied that Plaintiffs have met their burden to show that the Cambridge School is "appropriate" and "reasonably calculated to provide [K.D.] educational benefits." See Carlisle, 62 F.3d at 533. Two treating psychologists testified that K.D.'s psychological state dramatically improved. Further, Dr. Morgan, an expert in developing programs for students with disabilities, observed the performance of the Cambridge School's teachers in the classroom and opined that their training and methods of teaching were well-suited for K.D.'s needs.  This opinion is also validated by the several objective standardized test scores that showed K.D. dramatically improved while attending the Cambridge School.  This proof demonstrates that the Cambridge School's program was appropriate for K.D. and provided her with an educational benefit.

Defendant did not rebut Plaintiffs' evidence, but instead attempted to refute the Cambridge School's appropriateness by arguing that no teacher from the Cambridge School testified.  Defendant argues without testimony from those teachers the Court cannot know whether they are certified to teach special needs students or whether the Cambridge School is approved as a special education school.  (Tr. 2/15/05, 78:11-17.)  However, Defendant has not offered any affirmative evidence to show that the Cambridge School or its teachers are not qualified to teach special needs children, and Dr. Ferrise, Dr. Henly and Dr. Morgan all found the opposite.  Further, whether the Cambridge School was certified by the school board to teach special education is not a relevant inquiry.  Warren, 190 F.3d at 84 (stating a private school's failure to meet state education standards does not bar reimbursement under the IDEA).

Reviewing the ALJ's legal determinations de novo, and affording due weight to his factual findings, colored by the new expert testimony heard on June 22, 2007, the Court will reverse the ALJ's determination, and rule that K.D.'s Cambridge education was appropriate.

-14-

2.      N.J. Admin. Code § 6A:14-2.10(c)

Under the regulation, reimbursement may be denied if the parents fail to adhere to certain

notice provisions.  Namely:

> (c) The parents must provide notice to the district board of
> education of their concerns and their intent to enroll their child in a
> nonpublic school at public expense.  The cost of reimbursement . ..
> may be reduced or denied:
> 1. If at the most recent IEP meeting that the parents attended prior
> to the removal of the student from the public school, the parents
> did not inform the IEP team that they were rejecting the IEP
> proposed by the district;
> 2. At least 10 business days . . . prior to the removal of the student
> from the public school, the parents did not give written notice to
> the district board of education of their concerns or intent to enroll
> their child in a nonpublic school;"

N.J. Admin. Code § 6A:14-2.10(c).

Here, the ALJ ruled that Plaintiffs forfeited their right to reimbursement because they

failed to notify Holland Township of their dissatisfaction with the IEP and failed to state their

intent to send K.D. to a nonpublic school at Holland Township's expense ten days prior to K.D.'s

removal.  See N.J. Admin. Code § 6A:14-2.10(c).  Under the applicable standard of review, the

Court must make its own findings and give due weight to the findings of the ALJ.  Shore Reg'l,

381 F.3d at 198-99.  Further, the Court is not required to accept the findings of the administrative

law judge, Carlisle, 62 F.3d at 529, as long as the Court "fully explain[s] its reasons for departing

from the state decision."  S.H., 336 F.3d at 271.

Courts have stated that if "a parent unilaterally place[s his or her] child in a private

placement in response to a school district's failure to comply with the requirements of the IDEA,

he or she is entitled to be reimbursed for the cost of the placement."  See Burlington, 471 U.S. at

369-71.  Public schools are required to "develop an IEP through procedures reasonably

calculated to enable the child to receive educational benefits."  See Murphysboro v. Ill. State Bd.

of Ed., 41 F.3d 1162, 1166 (7th Cir. 1994) (citing Rowley, 458 U.S. at 206-07).  Plaintiffs gave

Holland Township an opportunity to provide K.D. with a FAPE for six years.  Although K.D.'s

performance consistently lagged behind the norm for a child of her capabilities and she did not

benefit from Holland Township's instruction, her IEP for 2003-04 school year contained virtually

no differences from the prior year's IEP.  (See Tr. 4/12/05, 109:4-110:4 (discussing the lack of

change in Holland Township's IEP for K.D.); compare Ex. J-30 (K.D.'s 2002 IEP) with Ex. J-44

(K.D.'s 2003 IEP, which lists virtually identical goals and instructional strategies as the

preceding year).)  Plaintiffs did sign off on the IEP for the 2003-04 school year, however, as

K.D.'s mother testified, she contemplated enrolling K.D. at the Cambridge School and voiced her

concerns to Holland Township officials throughout the 2002-03 year.  She eventually decided to

enroll K.D. in the Cambridge School in the summer prior to the 2003-04 school year.  Holland

Township, by continuing to employ the same ineffective IEP year after year, did not follow

procedures reasonably calculated to enable K.D. to receive an educational benefit.  Warren, 190

F.3d at 87 (finding "the parents' failure to express disagreement with the District's evaluation

and their delay in requesting reimbursement" was not a bar to reimbursement).

    Defendant argues that the ALJ was correct in ruling that Plaintiffs' failure to meet the

N.J. Admin. Code § 6A:14-2.10(c) notice requirements barred them from reimbursement.

However, N.J. Admin. Code § 6A:14-2.10(c) specifically states that "[t]he cost of reimbursement

. . . *may be* reduced or denied," not that it must be.  N.J. Admin. Code § 6A:14-2.10(c) (emphasis

added); J.S. v. Springfield Twp. Bd. of Educ., 05-cv-04891, 2007 WL 1813410, at *9 (D.N.J.

Jun. 9, 2007) (noting N.J. Admin. Code § 6A:14-2.10(c) "stipulates that the cost of

reimbursement 'may be reduced or denied,' not that it must"). Further, although the ALJ barred

Plaintiffs' request for reimbursement, the ALJ provided no analysis for his decision other than

noting that Plaintiffs failed to comply with the notice provisions required by their PRISE booklet.

The ALJ did not discuss why he chose to completely bar reimbursement, rather than limit it, and

he did not assess the discretionary nature of that decision. (ALJ's Op. at 27).

Based on the record, and giving "due weight" to the ALJ's determination, the Court

concludes that the preponderance of the evidence supports reimbursing Plaintiffs for the cost of

the Cambridge School's tuition from February 18, 2004– the date that Plaintiffs formally

informed Holland Township of their dissatisfaction with its program– until the end of K.D.'s

enrollment in June 2005. Bernardsville Bd. of Educ. v. J.H., 42 F.3d 149, 160-61 (3d Cir. 1994)

(denying reimbursement for the period plaintiffs failed to notify public school of their

dissatisfaction with the IEP, but awarding reimbursement post-notice).

While it is true that Plaintiffs failed to notify Holland Township initially of their

dissatisfaction with K.D.'s IEP, and failed to notify it that they were enrolling K.D. in the

Cambridge School for the 2003-04 school year, Plaintiffs corrected that defective notice within a

reasonable time. The Third Circuit has stated that parents who object to the IEP have a duty to

begin review proceedings "within a reasonable time of the unilateral placement for which

reimbursement is sought." Bernardsville, 42 F.3d 149. For a time frame to be considered

"reasonable," it may not be "more than one year, without [a] mitigating excuse . . . ." Id.

Here, Plaintiffs waited six months, until they were sure that K.D. was receiving an

educational benefit from the Cambridge School to request reimbursement, and filed a due

process petition in less than one year.  (Tr. 2/15/05, 34:14-35:5.)  K.D. had attended Holland

Township without receiving an appropriate education for over six years, and without having her

IEP substantially modified in her last several years of attendance.  (See Tr. 4/12/05, 109:4-110:4;

Ex. J-30; Ex. J-44.)  Plaintiffs decided to enroll K.D. at the Cambridge School, and wait several

months to notify Holland Township, until they were certain she was improving.  Under these

circumstances, Plaintiffs' delay of several months in notifying Holland Township was

reasonable.  See, e.g., J.S., 2007 WL 1813410, at *9 (finding plaintiffs were "entirely justified in

unilaterally placing [their child] in an environment where they felt he could/would succeed

predicated upon the advice they received by professionals" and awarding reimbursement despite

their failure to strictly comply with the formal notice requirements of N.J. Admin. Code § 6A:14-

2.10(c)); A.Z. ex rel. M.Z. v. Mahwah Twp. Bd. of Educ., No. Civ.A. 04-4003, 2006 WL

827791, at *6 (D.N.J. Mar. 30, 2006) (affirming a grant for reimbursement where plaintiffs

corrected their initially defective notice to the public school board).

    Further, Plaintiffs did notify Holland Township of their intent to enroll K.D. at the

Cambridge School several times prior the start of the 2003-04 school year.  (Tr. 2/15/05, 41:14-

17 (Holland Township's lawyer admitting "[t]here were oral discussions to the effect that school

district, teachers, officials, [were told by Plaintiffs] 'We're going to place our child at Cambridge

School. We're thinking about Cambridge School.'"); 73:18-22 (Holland Township's director

stating he was informed of K.D.'s transfer prior to the 2003-04 school year); 2/16/05, 83:12-

85:17 (Celeste Aliberti, a Holland Township School Counselor for K.D., testifying K.D. and her

mother told her of their intention to place K.D. out-of-district in March, 2003); 4/12/05, 103:16-

104:12; 139:12-141:2 (K.D.'s mother testifying that she told the CST in January 2003 that she

was considering placing K.D. in the Cambridge School and that she verbally told the Holland

Township principal the same prior to the 2003-04 school year).)  Although these notices did not

formally comply with the requirements listed in the PRISE booklet, and with N.J. Admin. Code §

6A:14-2.10(c), the Court is satisfied the Plaintiffs took reasonable steps to inform Holland

Township of their dissatisfaction with K.D.'s IEP, and that Holland Township was formally on

notice of that dissatisfaction, at the latest, by February 18, 2004, when Plaintiffs requested

reimbursement.  Therefore the Court concludes that Holland Township must reimburse Plaintiffs

for the cost of tuition from February 18, 2004, until the end K.D.'s enrollment at the Cambridge

School in June 2005.

IV.     Conclusion

For the foregoing reasons,

IT IS on this 9th day of July, 2007,

ORDERED that the Court's April 23, 2007 Order [25] denying without prejudice the

parties' Cross-motions for Summary Judgment is vacated pursuant to Local Civil Rule 7.1(i) (see

Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999)

(reconsideration is appropriate when there is "availability of new evidence that was not

previously available"); and it is further

ORDERED that Plaintiff's Motion for Summary Judgment [12] is GRANTED; and it is

further

ORDERED that Defendant's Cross-Motion for Summary Judgment [13] is DENIED; and

it is further

ORDERED that the ALJ's decision is REVERSED and Plaintiffs are entitled to

reimbursement of tuition pursuant to 20 U.S.C. § 1412(a)(10)(C)(ii); N.J. Admin. Code § 6A:14-

2.10(b); and it is further

      ORDERED that the case is CLOSED.


                                                          s/Anne E. Thompson
                                            ANNE E. THOMPSON, U.S.D.J.